UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ROMMIE L. HAMMONS, *et al.*                              CIVIL ACTION

versus                                                   No.  06-9173

FOREST OIL CORPORATION                                   SECTION: I/3

ORDER AND REASONS

Before the Court is defendant's, Forest Oil Corporation's ("Forest"), motion for summary judgment. For the following reasons, Forest's motion is **GRANTED**.

*Background*

On or about January 24, 2002, Forest entered into a Master Service Contract ("MSC") with plaintiff's, Rommie Hammons' ("Hammons"), employer, Quality Construction and Production ("QCP").[1] In the aftermath of Hurricane Katrina and pursuant to

---

[1]Rec. Doc. No. 28-4, p. 2; *see also* Rec. Doc. No. 29, p. 1, para. 2.  The MSC provides that:

It is expressly understood that [QCP] is an independent contractor and that neither [QCP] nor [QCP's] principals, partners, employees, or subcontractors are servants, agents, or employees of Forest . . . . [QCP] warrants that it is an expert in the work it will perform, that its employees and agents have been trained to follow all applicable laws, rules, and regulations and to work safely, and that all of its equipment has been thoroughly tested and inspected and is safe, sufficient, and free of any defect, latent or otherwise . . . .

Rec. Doc. No. 28-4, p. 2.

the MSC, QCP was hired to perform hurricane repair work on Forest's W-1 platform.[2]

On or about November 14, 2005, while working on Forest's platform, Hammons and other QCP employees were "cold-cutting"[3] and removing connective piping from vessels located on Forest's platform.[4]  The piping being removed by Hammons and other employees contained petroleum fluids ("sludge"), which poured onto the platform deck and ultimately caused Hammons to slip and fall.[5] Hammons alleges that, as a result of his accident, he sustained multiple injuries.

On October 27, 2006, Hammons filed the above-captioned lawsuit against Forest alleging that Hammons' accident and injuries were caused solely by Forest's negligence.[6]  Hammons argues that Forest,

---

[2]Rec. Doc. No. 28-4, p. 2.

[3]"Cold-cutting" is when a compressed air hose is connected to a pneumatic saw so that sparks are not created while the saw is in use.  *See* Hammons Dep., p. 18, ll. 12-17.  Even though the pipes had been drained prior to cutting, cold-cutting was a necessary precaution because there was still fluid trapped in the pipes that could be ignited by sparks from the saw.  *See* Moore Dep., p. 25, ll. 19-25.

[4]Rec. Doc. No. 1, p. 2, para. 5.

[5]Hammons testified that he slipped in sludge that leaked from pipes cut by Hammons and other QCP employees.  *See* Hammons Dep., p. 48, ll. 1-6.  Forest does not dispute that the sludge caused Hammons to slip and fall.

[6]*Id.*  Hammons alleges that Forest was negligent in the following non-exclusive ways: (1) negligently creating and/or permitting the existence of an unreasonably dangerous condition; (2) negligently failing to provide Hammons with a safe place to work; (3) failing to do what should have been done so as to avoid the incident set forth in the complaint; (4) negligent supervision; (5) negligent hiring; (6) negligent entrustment; and (7) any and all other acts of negligence and/or fault established through discovery and/or shown at the trial of this matter.  *Id.* para. 8.  Hammons also alleges that there is a legal presumption that Forest, as owner of the platform, is liable for injuries caused by unreasonably dangerous conditions on its premises.  *Id.*

as QCP's principal and as owner of the platform on which Hammons was injured, is liable to Hammons pursuant to Articles 2315, 2317, 2317.1, and 2322 of the Louisiana Civil Code.[7]

On November 14, 2007, Forest filed this motion arguing that there are no genuine issues of material fact concerning Forest's liability under the above-referenced articles and, as such, Forest is entitled to a judgment as a matter of law.

### *LAW AND ANALYSIS*

## I. *RULE 56 STANDARD*

Summary judgment should be rendered if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.; Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (internal quotation omitted).

---

[7]Rec. Doc. No. 35.

Once the party seeking the summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The showing of a genuine issue is not satisfied by creating some metaphysical doubt as to the material facts by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id*. The non-moving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731 (1999) (internal quotation and citation omitted) (alternation in original).

## II. *DISCUSSION*

### a. *ARTICLE 2315 - NEGLIGENCE*[8]

Hammons argues that Forest is liable to Hammons pursuant to Article 2315 because it breached its duty to ensure that the pipes were properly cleaned prior to Forest instructing Hammons to cut the pipes.[9]  Hammons suggests that, under Forest's direction, the pipes at issue were drained and marked with spray-paint in order to indicate which pipes were ready to be cut.[10]  In light of the fact that sludge leaked from the pipes after they were cut, Hammons argues that Forest failed to properly clean the pipes and this failure caused Hammons' injuries.[11]

The threshold inquiry in any negligence action is whether the defendant owed a duty to the plaintiff, i.e., "whether the defendant had a duty to conform his conduct to a specific standard." *Hanks v. Entergy Corp.*, 944 So.2d 627, 633 (La. 2006). "[T]he existence of a duty, and the corollary issue of whether the duty extends to protect a particular plaintiff from a particular harm, are *questions of law* usually determined together." *McLachlan*

----

[8]Louisiana Civil Code Article 2315 provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. Code Ann. art. 2315.  Louisiana law provides that a principal may be held liable for the principal's **own** acts of negligence. *Maxwell v. Nabors Drilling USA Inc.*, 1999 WL 460777, at *5 (E.D. La. June 29, 1999) (Duval, J.).

[9]Rec. Doc. No. 35, p. 7.

[10]*Id.*

[11]*Id.* at p. 9.

*v. New York Life Ins. Co.*, 488 F. 3d 624, 627 (5th Cir. 2007) (emphasis added).

Hammons argues that the "specific duty" that Forest owed to Hammons was to ensure that the pipes were properly cleaned prior to cutting.[12]   Forest argues that it owed no such duty to Hammons because Forest hired another independent contractor, Baker Energy ("Baker"), to clean the pipes and mark them ready for removal and, therefore, Forest is not liable as Baker's principal.[13]   The Court notes that Hammons offers no evidence to rebut Forest's assertion that Baker was an independent contractor.

"Louisiana law provides the general rule that a principal is not liable for the negligent acts of an independent contractor acting pursuant to [a] contract." *Broussard v. Chevron U.S.A., Inc.*, 211 Fed. Appx. 293, 294 (5th Cir. 2006).  However, there are two exceptions to this general rule.  A principal may be held liable when: (1) the lawsuit arises out of the ultrahazardous activities of the independent contractor or (2) the principal retains operational control over the independent contractor's work or expressly or impliedly authorizes unsafe work practices that lead to an injury.  *Id.*, *see also Stanfield v. Island Operating Co., Inc.*, 2007 WL 2460964, at *2 (E.D. La. Aug. 24, 2007) (Porteous, J.) (citing *Klein v. Cisco-Eagle, Inc.*, 855 So.2d 544

---

[12]Rec. Doc. No. 35, p. 7.

[13]Rec. Doc. No. 36, pp. 9, 10.

(La. App. 2 Cir. 2003)); *Alexander v. Broadmoor, L.L.C.*, 2006 WL 2088287, at *1 (E.D. La. Jul. 24, 2006) (Lemelle, J.) (citing *Klein*, 855 So.2d at 850).

**(1)** ***ULTRAHAZARDOUS ACTIVITY***

"Ultrahazardous activities present 'a risk of harm that cannot be eliminated through the exercise of due care.'" *Alexander*, 2006 WL 2088287, at *2 (quoting *O'Neal v. Int'l Paper Co.*, 715 F. 2d 199, 202 (5th Cir. 1983)). The test for determining whether an activity is "ultrahazardous" entails three elements: (1) the activity must be an activity relating to land or to other immovables; (2)the activity itself must cause the injury and defendant must have been engaged directly in the injury-producing activity; and (3) the activity must not require the substandard conduct of a third party to cause injury. *Id.* (citing *Perkins v. F.I.E. Corp.*, 762 F. 2d 1250, 1267 (5th Cir. 1985)).

The third prong of the test for determining whether an activity is ultrahazardous is not satisfied in this case. When an activity is likely to cause damage *only* when there is substandard conduct on someone's part, the activity is not ultrahazardous. *See Perkins*, 762 F. 3d at 1268.

The very nature of Hammons' Article 2315 claim requires Hammons to establish that his accident would not have allegedly happened without the substandard conduct of someone else. Accordingly, the doctrine of ultrahazardous activity is

-7-

inapplicable.

### (2) *OPERATIONAL CONTROL AND AUTHORIZATION*

Hammons argues that the pipes on Forest's platform were drained under Forest's direction. However, Hammons does not offer sufficient evidence to establish that Forest exercised operational control as contemplated by Louisiana law or that Forest authorized Baker to engage in unsafe work practices.

"'Operational control' exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way . . . ." *Fruge*, 337 F. 3d at 564.  "[The] physical presence of a representative of a principal is not sufficient to show supervision or control." *Id*.

The undisputed evidence presented by Forest establishes that Baker was responsible for draining the pipes and marking the same ready for removal.[14]  Carl Abshire ("Abshire"), a Forest supervisor at the time of Hammons' accident, testified that he *watched* Baker drain a couple of pipes and vessels to make sure Baker was "doing it right."[15]  However, there is nothing in Abshire's, or any other deponent's, testimony indicating that Abshire and Forest did

---

[14]Dwight Moore testified that Baker would drain the pipes and, thereafter, inform Moore which pipes were ready to be cut and removed.  *See* Moore Dep., pp. 23-26.  Carl Abshire testified that Baker's operators directed the pipe draining activities.  *See* Abshire Dep., p. 39, ll. 1-25.

[15]Abshire Dep., p. 39, ll. 3-12.

-8-

anything more than observe Baker's pipe-draining activities or that Abshire or Forest expressly or impliedly authorized Baker to engage in an unsafe work practice.[16]   "'[A]bsent an express or implied order . . . to engage in an unsafe work practice leading to injury, a principal like [Forest] cannot be liable under the operational control exception." *Zeigler v. BP Amer. Prod. Co.*, 2006 WL 2850163, at *3 (E.D. La. Oct. 4, 2006) (Fallon, J.) (quoting *Coulter v. Texaco*, 117 F. 3d 909, 912 (5th Cir. 1997)).

Considering the fact that the evidence establishes that neither Baker nor Forest were engaged in an ultrahazardous activity, Forest did not exercise operational control or supervision over Baker's activities, and Forest did not authorize unsafe work practices that led to Hammons' injuries, Hammons cannot prove that Forest is liable for Baker's potential negligence. *See Maxwell*, 1999 WL 460777, at *5.   Therefore, Forest is entitled to judgment as a matter of law with respect to Hammons' claims under

---

[16] "'Mere inspection of the work done by an independent contract and direction as to the final results of the project is insufficient to support a conclusion that the principal has retained enough control over the project to defeat the principal/independent contractor immunity.'" *Smith v. Ill. Cent. R.R. Co.*, 2002 WL 59406, at *2 (E.D. La. Jan. 16, 2002) (Beer, J.) (quoting *Nippa v. Chevron*, 774 So.2d 310, 315 (La. App. 4 Cir. 2000)).
    The Court notes that neither party argues, and the Court does not find, that Abshire's or Forest's limited observation of Baker's pipe-draining activities constituted an express or implied authorization to engage in an unsafe work practice.   "An employer will be liable only if it expressly or impliedly authorized the unsafe manner in which work was done despite an available safe method, which included the taking of adequate precautions, which would have rendered the practice at least ordinarily safe." *Calloway v. CNG Producing Co.*, 1999 WL 447451, at *3 (E.D. La. June 29, 1999) (Porteous, J.).   "A principal does not have a duty to intervene in the operations of its independent contractor in order to correct a dangerous condition or work procedure created by the independent contractor." *Id.* (citing *Ainsworth v. Shell Offshore*, 829 F. 2d 548, 551 (5th Cir. 1987)).

Article 2315.

   **b.** ***ARTICLE 2317 and 2317.1 - CUSTODIAL LIABILITY***[17]

   Hammons argues that Forest is liable to him pursuant to
Articles 2317 and 2317.1 because Forest owned the defective
"things" that caused Hammons' accident, i.e., the pipes being cut
by Hammons and QCP.[18]  Hammons asserts that the "defect" in this
case was the fluid and sludge contained in the pipes.[19]

   "The first requirement for custodial liability under
Louisiana [Civil] Code articles 2317 and 2317.1, is that the
'thing' that caused the injury must be in the custody of the
defendant." *Fruge v. Parker Drilling Co.*, 337 F. 3d 558, 565
(5th Cir. 2003).  Although there is a presumption that an owner
has custody of the thing he owns, the presumption is rebuttable
and "a non-owner defendant may have custody over property if 'he
exercises direction and control of the thing and derives some

---

   [17]Louisiana Civil Code Article 2317 provides that "[w]e are responsible,
not only for the damage occasioned by our own act, but for that which is caused
by the act of persons for whom we are answerable, or of the things which we have
in our custody." La. Civ. Code. Ann. art. 2317.  Article 2317 is to be read in
conjunction with the modifications set forth in Article 2317.1.  *Id.*  Louisiana
Civil Code Article 2317.1 provides:
        The owner or custodian of a thing is answerable for damage
        occasioned by its ruin, vice, or defect, only upon a showing that he
        knew or, in the exercise of reasonable care, should have known of
        the ruin, vice, or defect which caused the damage, that the damage
        could have been prevented by the exercise of reasonable care, and
        that he failed to exercise such reasonable care.  Nothing in this
        article shall preclude the court from application of the doctrine of
        res ipsa loquitur in an appropriate case.
La. Civ. Code. Ann. art. 2317.1.

   [18]Rec. Doc. No. 35, p. 10.

   [19]*Id.*

-10-

benefit from it.'"  *Id.* (quoting *Coulter*, 117 F. 3d at 913-14).

Although Louisiana law dictates that Forest, as the owner of the pipes at issue, is presumed to have custody, the pleadings and evidence presented by Forest rebut this presumption and establish that Forest did not exercise the kind of supervision and control necessary to establish custody for purposes of Articles 2317 and 2317.1.  *See, e.g., Fruge*, 337 F. 3d at 565. Hammons concedes that, at all times pertinent to this case, Forest did not exercise operational control of Hammons' and QCP's pipe-cutting activities.[20]  Further, Dwight Moore, QCP's superintendent at the time of Hammons' accident, testified that Moore was the only person that directly supervised QCP employees in the cutting and removal of the pipes.[21]  Hammons, himself, testified that the only person from whom Hammons would take directions while in the performance of his employment duties was Moore.[22]  Despite the fact that supervisors employed by Forest were on Forest's platform at the time of Hammons' accident,[23] "the presence of company men who monitor the contractor's performance . . . [does not come] 'anywhere close to creating the kind of supervision and control necessary' to establish the

---

[20]*Id.* at p. 2.

[21]*See* Moore Dep., p. 56, ll. 1-25.

[22]*See* Hammons Dep., p. 10, ll. 3-9; p. 58, ll. 5-15.

[23]*See* Moore Dep., p. 55, ll. 2-4 (testifying that Forest's foremen were on the platform at the time of Hammons' accident).

-11-

principal's custody . . . for purposes of Article 2317." *Fruge*, 337 F. 3d at 565.

Further, even if custody was established, Hammons offers no evidence or factual support for the argument that the fluid and sludge constitute "defects" for purposes of Article 2317.[24] As contemplated by Article 2317, a defect "is a flaw or condition of relative permanence inherent in the thing as one of its qualitites." *Dauzat v. Thompson Const. Co.*, 839 So.2d 319, 322-23 (La. App. 5 Cir. 2003) (citing *Barron v. Webb*, 698 So.2d 727 (La. App. 2 Cir. 1997)); *see also Duffy v. Conoco, Inc.*, 1996 WL 271635, at *6 (E.D. La. May 21, 1996) (Vance, J.); *Murry v. Aran Energy Corp.*, 863 F. Supp. 315, 319 (E.D. La. 1994) (Livaudais, J.).  "A temporary condition may constitute a hazard, but it does not constitute a defect as contemplated by Article 2317." *Id.*

Considering the fact that there are no genuine issues of material fact concerning whether Forest had custody of the pipes at issue and whether fluid and sludge constitute "defects," Forest is entitled to judgment as a matter of law with respect to Hammons' claims pursuant to Articles 2317 and 2317.1.

---

[24]With respect to lawsuits brought pursuant to Article 2317, plaintiffs bear the burden of proof that the "thing" at issue had a vice or defect that created an unreasonable risk of harm. *See Dorthlon v. St. Francis Med. Ctr*, 677 So. 2d 654, 657 (La. App. 2 Cir. 1996).

c.  *ARTICLE 2322 -PREMISES LIABILITY*[25]

Hammons asserts that Forest's premises, the platform on which Hammons was injured, was "defective" because of the fluid and sludge contained in the pipes at issue.[26]  Hammons argues that, in light of the fact that Forest knew that its premises was defective and that Forest failed to exercise reasonable care to remedy the defects, Forest is liable to Hammons pursuant to Article 2322.[27]

If Hammons is arguing that the fluid and sludge were the defects in Forest's platform, Hammons cannot maintain a cause of action under Article 2322 because the fluid and sludge at issue

---

[25]Louisiana Civil Code Article 2322 provides:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.  Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur.
La. Civ. Code. Ann. art. 2322.
Article 2322 was formerly a strict liability article.  However, as a result of the 1996 amendments to the Louisiana Civil Code, the cause of action provided for under Article 2322 is now a negligence cause of action.  *Ambrose v. McLaney*, 959 So.2d 529, 533 (La. App. 4 Cir. 2007).  Plaintiffs alleging negligence pursuant to Article 2322 must now prove that (1) the defendant knew or should have known of the vice or defect; (2) the damage could have been prevented by the exercise of reasonable care; and (3) the defendant failed to exercise reasonable care.  *Id* (citing *Greenhouse v. C.F. Kenner Assocs. Ltd. P'ship*, 723 So.2d 1004, 1007 (La. App. 4 Cir. 1998)).  "Under Article 2322, the plaintiff must also prove 'either a building or its appurtenance and a ruin that presents an unreasonable risk of harm caused by neglect to repair or a vice in the original construction.'"  *Ambrose*, 959 So.2d 533 (quoting Frank L. Maraist & Thomas C. Galligan, *Louisiana Tort Law* § 14-6 (1996)).

[26]Rec. Doc. No. 35, p. 10.

[27]*Id*.

-13-

in this case do not constitute the types of "defects" or "ruin"
contemplated by Article 2322.  In order to recover damages under
Article 2322, plaintiffs must establish that the cause of their
injury had become an appurtenance to, or integral part of,
defendant's premise by virtue of physical attachment thereto.
*Fruge*, 337 F. 3d at 565; *see also Hollinger v. Pogo Producing
Co.*, 2006 WL 3068830, at *4 (E.D. La. Oct. 25, 2006) (Feldman,
J.) (citing *Fruge*, 337 F. 3d at 565) (explaining that Louisiana
law provides that an action based on premises liability cannot be
maintained when the cause of the injury was not permanently
attached to the building).[28]

In *Hollinger v. Pogo Producing Co.*, plaintiff, an
independent contractor, was injured after slipping on a mat and
striking his head on steel grating.  *Hollinger*, 2006 WL 3068830,
at *1.  Plaintiff was uncertain whether he slipped on the mat
because it was not made of "non-skid" material or because oil had
leaked onto the mat.  *Id.*

As a result of his injuries, plaintiff filed a lawsuit
against his principal asserting, among other causes of action,
premises liability pursuant to Article 2322.  *Id.*  The Court
found that, regardless of whether plaintiff's injuries were

---

[28]"'Things are considered permanently attached if they cannot be removed
without substantial damage to themselves or to the immovable to which they are
attached.'"  *Fruge*, 337 F. 3d at 565. (quoting La. Civ. Code Ann. art. 466).
Things that are permanently attached to buildings or other constructions are
considered their component parts.  *Id.*

caused by the mat or oil on the floor, neither condition qualified as a part of the construction of the platform and, as such, plaintiff could not maintain his claim for premises liability under Article 2322.  *Id.* at *4.

Hammons testified that he slipped in fluid and sludge that discharged from the pipes he was cutting.[29]  Similar to *Hollinger*, the fluid and sludge which caused Hammons to slip do not constitute part of the construction of Forest's platform. Therefore, Hammons cannot maintain a cause of action against Forest under Article 2322 based on the argument that fluid and sludge constituted a defect in Forest's platform.

Furthermore, Article 2322 provides that "[t]he owner of a building is answerable for the damage occasioned by its ruin,[30] when this is caused by neglect to repair it, or when it is the result of vice or defect in its original construction."  La. Civ. Code Ann. art. 2322.  However, a "defect under Article 2322 cannot be inferred simply because an accident occurred."  *McCoy v. Liberty Mut. Life Ins. Co.*, 956 So.2d 802, 806 (La. App. 2 Cir. 2007).

The question of whether a defect exists for purposes of

---

[29]*See* Hammons Dep., p. 48, ll. 1-6.

[30]"A ruin has been understood to mean a 'partial destruction or collapse of a building.'" *Duffy*, 1996 WL 271635, at *6 (quoting *Murry*, 863 F. Supp. at 319).  "The mere existence of a defect is not what imposes liability on a building owner . . . . There must be a defect or vice which causes a partial destruction or collapse of the building." *Murry*, 863 F. Supp. at 319.

Article 2322 turns on whether the alleged defect presented an unreasonable risk of harm. *Id.* In cases involving buildings under construction or construction site accidents, courts in Louisiana have found that temporary conditions of the construction that make a risk obvious do not constitute unreasonable risks of harm and, therefore, do not constitute defects or ruin as contemplated by Article 2322. *Id.* (citing *Barron v. Webb*, 698 So.2d 727 (La. App. 2 Cir. 1997)).

The record evidence establishes that Hammons slipped in sludge that poured from pipes that Hammons and QCP had cut.[31] Considering the fact that, prior to Hammons' accident, the fluid and sludge were periodically washed from the deck,[32] the slippery conditions caused by the fluid and sludge constituted an ongoing temporary condition occasioned by the construction project[33] taking place on Forest's platform. While the temporary presence of fluid and sludge on the cement deck likely required the exercise of precaution, the risk created thereby was obvious to Hammons[34] and, as such, the risk was not unreasonable. *See,*

---

[31]*See* Hammons Dep., p. 48, ll. 1-6.

[32]Both Hammons and Moore testified that occasionally QCP employees would stop working so that the sludge that spilled onto the deck could be washed away. *See Id.*, p. 51, ll. 1-25; p. 25, ll. 13-18; *see also* Moore Dep., pp. 62-63.

[33]Abshire testified that the pipes and vessels at issue in this case were being dismantled so that other pieces of equipment could be placed in the same location. Abshire Dep., p. 12, ll. 1-18.

[34]Hammons testified that he could see the sludge in which he was standing and that such sludge ultimately caused Hammons to slip and fall. *See* Hammons Dep., pp. 26 & 28.

*e.g., McCoy*, 956 So.2d at 807.

Considering the fact that Hammons offers no evidence creating a genuine issue of material fact concerning Hammons' ability to prove Forest's liability under Article 2322, Forest is entitled to judgment as a matter of law.[35]

Accordingly,

**IT IS ORDERED** that Forest's motion for summary judgment is **GRANTED**.

New Orleans, Louisiana, February 7th 2008.

LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**

---

[35]The Court need not address Forest's argument concerning the "Repairman's Doctrine" in light of the Court's findings with respect to Articles 2317, 2317.1, and 2322.  *See Ladue v. Chevron, U.S.A., Inc.*, 920 F. 2d 272, 277-78 (5th Cir. 1991) (explaining that premises owners' incentive to repair defects would be destroyed if owners were held liable when repairmen are injured by the very condition they were hired to repair); *see also Gary v. Chevron, U.S.A., Inc.*, 940 F. 2d 139, 142 (5th Cir. 1991) (citing *Ladue*, 920 F. 2d at 278) (explaining that article 2322 damages are unavailable to a repairperson who is injured by the thing or condition that the repairperson is hired to fix).
    The Court notes that Forest denies any liability pursuant to Article 2320, which is Louisiana's vicarious liability article.  Rec. Doc. No. 36, p. 1.  In light of the fact that Hammons does not assert a claim against Forest pursuant to Article 2320, the Court need not address Forest's potential liability thereunder.